IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMIRO FRAIRE,

    Plaintiff,

v.                                              Civ. No. 1:20-cv-01171 MIS/JFR

DENIS MCDONOUGH,
Secretary of Veterans Affairs;
DARREN PALMER; and
CELESTE CASAUS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant McDonough's[1] Motion for Judgment on the Pleadings (ECF No. 25) and Defendant McDonough's Motion for Summary Judgment (ECF No. 33). Having considered the parties' briefing and relevant law, the Court DENIES judgment on the pleadings but GRANTS summary judgment in favor of Defendants.[2]

## BACKGROUND

Plaintiff Ramiro Fraire was hired in 2013 by the New Mexico Veterans Affairs Healthcare System ("VA") as an Inpatient Pharmacy Technician. ECF No. 33-1 at 1. As a new employee, Mr. Fraire was required to serve a one-year probationary period beginning December 15, 2013. *Id*. During the probationary period, designed to assess his

---

[1] Defendant McDonough has replaced Robert Wilkie as the Secretary of Veterans Affairs since the motions were filed. *See* ECF No. 41 at 1 n.1; Fed. R. Civ. P. 25(d).

[2] Although only Defendant McDonough moved for summary judgment, the Court finds summary judgment is appropriate as to all defendants. "Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate." *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993). Mr. Fraire's claims against Defendants Palmer and Casaus are therefore subject to summary judgment for all the same reasons applicable to the claims against Secretary McDonough.

fitness for employment, he enjoyed fewer rights and protections than non-probationary employees. ECF No. 33-2 at 1, 4. Mr. Fraire's immediate supervisor was Celeste Casaus, who supervised eight female and six male Inpatient Pharmacy Technicians. ECF No. 33-2 at 1. Mr. Fraire initiated his Inpatient Technician training on December 19, 2013, and completed training on March 7, 2014. ECF No. 33-2 at 6–8. This training covered "Accessing and Operation of Accudose[3] Cabinets," "Filing and Stocking Medications in Accudose Cabinets," and "Stocking Controlled Substances in Accudose Cabinet." *Id*. at 7.

On March 24, 2014, Mr. Fraire was scheduled to begin his tour at 8:00 a.m., but reported to work at 8:10 a.m. and did not begin his tour until 8:15 a.m. *Id*. at 2; ECF No. 33-3 at 5, 38:22–25. On April 17, 2014, Ms. Casaus issued a "Written Counseling" stating that Mr. Fraire's tardiness was in violation of various policies and that he was expected, in future, "to be at your work station ready, willing and able to work at the start of your shift or follow leave requesting procedures." ECF No. 33-2 at 9. Ms. Casaus also referred Mr. Fraire to the Employee Assistance Program ("EAP"), citing "[c]oncerns with deficiencies in your performance and/or conduct." *Id*. at 11. Mr. Fraire signed both the Written Counseling and the EAP referral. *Id*. at 10, 11.

On May 12, 2014, Ms. Casaus prepared a Report of Contact ("ROC") stating it was brought to her attention that Mr. Fraire had loaded 30 milligrams of codeine—a Schedule II controlled substance—into an Accudose dispenser in an open pocket.[4] *Id*. at 12. Thereafter, on July 15, 2014, Mr. Fraire received additional "Inpatient Technician

---

[3] An Accudose cabinet is "an automated dispensing cabinet used to track, distribute, and securely store controlled substances." ECF No. 33-2 at 2 n.1.

[4] Mr. Fraire disputes that he was notified of this incident, but does not dispute that it occurred. *See* ECF No. 33-3 at 3, 29:5–14.

Training in the Vault," during which all trainees were instructed that Schedule II narcotics must be stored in a locking pocket in the Accudose dispenser. *Id*. at 2; ECF No. 33-3 at 52:17–20.

On August 28, 2014, Pharmacist and Vault Supervisor Laura West prepared an ROC stating that Mr. Fraire had loaded 15 milligrams of codeine into an Accudose dispenser in an open pocket. ECF No. 33-2 at 13. Ms. Casaus met with Mr. Fraire on September 3, 2014, to conduct a "Fact Finding"—i.e., an informal investigation—into the incident. *Id*. at 14. During the Fact Finding, Mr. Fraire admitted that he did not know codeine was a Schedule II narcotic or that a medication's packaging indicated the class of the drug. *Id*. at 3, 14; ECF No. 33-3 at 7, 50:17–24, 53:8–21. His understanding was that codeine was a Schedule III narcotic. ECF No. 33-3 at 7, 51:6–7. Ms. Casaus explained his error and showed him where the drug's class was written on the packaging. ECF Nos. 33-2 at 3; 33-3 at 7, 53:8–21.

Ms. Casaus recommended termination of Mr. Fraire's employment based on the three incidents described above. ECF No. 33-1 at 1; 33-2 at 3. Darren Palmer, the Chief of Pharmacy, made the decision to terminate his employment. ECF No. 33-1 at 2. On October 28, 2014, Mr. Fraire received notice of his termination during the probationary period. *Id*. at 3–5. Following a formal complaint of employment discrimination with the VA's Office of Resolution Management, Diversity, and Inclusion, Mr. Fraire received a Final Agency Decision on August 10, 2020. ECF No. 7 at 9. He filed suit in this Court on November 10, 2020, proceeding pro se.[5] ECF No. 1. In his Second Amended Complaint,

---

[5] As a pro se litigant, Mr. Fraire is entitled to liberal construction of his pleadings. *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The Court has afforded liberal construction

Mr. Fraire alleges Title VII sex discrimination on the basis that (1) similarly situated female coworkers were not terminated for similar violations of policy and (2) female coworkers received preferential treatment. ECF No. 7 at 7. Defendant's motions are now before the Court.

## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant's Motion for Judgment on the Pleadings (ECF No. 25) is based on Mr. Fraire's failure to file suit within ninety days of receiving the Final Agency Decision. *See* ECF No. 7 at 21; 42 U.S.C. § 2000e-16(c). The parties agree that Mr. Fraire received notice of the agency decision on August 10, 2020. Therefore, he was required to file no later than November 9, 2020.

Mr. Fraire filed his complaint pursuant to the District of New Mexico's COVID-19 Temporary Administrative Procedures Manual, which permitted pro se litigants to file a new case by email to the designated Clerk's office mailbox. Mr. Fraire's complaint was docketed by the Clerk at 10:13 a.m. on November 10, 2020. ECF No. 1. Mr. Fraire asserts he sent the email at 11:59 p.m. on November 9, 2020.[6] ECF No. 26. Reference to the Clerk's pro se inbox reveals that Mr. Fraire's email was received at exactly 12:00 a.m. on November 10, 2020. A complaint is considered "filed" "when it is in the actual or constructive possession of the clerk." *Jarrett v. US Sprint Commc'ns Co.*, 22 F.3d 256,

---

to Mr. Fraire in evaluating his complaint and briefing. Nevertheless, the Court cannot act as Mr. Fraire's advocate or excuse any failures to comply with the rules of procedure. *Id*.

[6] Mr. Fraire attached a printout of the "sent" email as an exhibit to his response. ECF No. 26 at 3. Defendant objects to the exhibit on the basis of authentication. Given the Clerk's confirmation of the date and time Mr. Fraire's email was received, the Court need not rely on Mr. Fraire's exhibit.

4

258 (10th Cir. 1994), *cert. denied*, 513 U.S. 951 (1994). Therefore, Mr. Fraire's complaint was filed at 12:00 a.m. on November 10, 2020.

"Compliance with the filing requirements of Title VII is not a jurisdictional prerequisite, rather it is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Million v. Frank*, 47 F.3d 385, 389 (10th Cir. 1995). Generally, in this circuit, "a Title VII time limit will be tolled *only* if there has been active deception of the claimant regarding procedural requirements." *Jarrett*, 22 F.3d at 260 (emphasis in original). Mr. Fraire does not contend that any such deception occurred. However, the Tenth Circuit has also instructed that "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Id*.

In this instance, although Defendant did not deceive Mr. Fraire as to the filing requirements, the Court finds the application of equitable tolling is warranted. First, the filing arrived precisely one minute late. This exceptionally de minimis failure to meet the deadline merits equitable tolling. *See Janczewski v. Secretary, Smithsonian Inst.*, 767 F. Supp. 1, 5–6 (D.D.C. 1991) (applying the "extraordinary" remedy of equitable tolling where, due to the temporary absence of a courthouse security guard, the Title VII complaint was filed one minute late). Second, there is some ambiguity with respect to filing time in the Local Rules of Civil Procedure, which provide that "an electronic document is considered filed on the date of the electronic transfer, including weekends and holidays. A filing day is defined as 12:00:00 a.m. to midnight." D.N.M.LR-Civ. 5.1(c). From this instruction, Mr. Fraire might in good faith have concluded that documents filed precisely at 12:00 a.m. on November 10 would be deemed filed on the preceding "filing

day," November 9. For these reasons, judgment on the pleadings will be denied and the merits considered.

## MOTION FOR SUMMARY JUDGMENT

### I.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once that threshold is met, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In applying the summary judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017).

### II.   Burden-Shifting Framework

Plaintiff claims he was discriminated against on the basis of his sex (male). He neither alleges nor presents direct evidence of discrimination.[7] Therefore, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

[7] "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quotation omitted).

6

792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of sex discrimination. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). Next, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id*. Finally, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretextual. *Id*.

Ordinarily, the Title VII plaintiff makes a prima facie showing of sex discrimination by presenting evidence that "(1) the victim belongs to a protected class, (2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). However, where the plaintiff is a member of a historically favored group and claims "reverse discrimination," the prima facie case requires stronger proof. *Ibrahim v. Alliance for Sustainable Energy, LLC*, 994 F.3d 1193, 1201 (10th Cir. 2021). A reverse discrimination plaintiff must show, in lieu of membership in a protected class, "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). Alternately, the plaintiff may establish a prima facie case by presenting "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id*. at 590. A reverse discrimination plaintiff who cannot make either of these showings will fail at the first step of the burden-shifting framework. *Ibrahim*, 994 F.3d at 1201.

### III.  Analysis

The Court finds Defendants are entitled to summary judgment because Mr. Fraire has failed to make a prima facie showing of reverse sex discrimination. Mr. Fraire's claims are based on the factual premise that similarly situated female employees were more favorably treated. However, no evidence supports this allegation and Mr. Fraire has therefore failed to carry his burden at the summary judgment stage.

With respect to his termination, Mr. Fraire alleges that similarly situated female coworkers did not face similar discipline for similar violations of policy. *Id*. He identifies three such violations: (1) abandonment of Schedule II medication in the Accudose by Pharmacy Technicians April Fleshman and Tina Cruz in January/February 2014, (2) inappropriate delivery/storage of Lorazepam and Octreotide by unknown technicians from approximately April 2014 to July 2014, and (3) inappropriate delivery/storage of antibiotic IV medications and inadequate compounding record keeping by unknown technicians. *Id*.

Although Mr. Fraire alleges that female coworkers April Fleshman and Tina Cruz "abandon[ed]" Schedule II medication in the Accudose dispenser, he does not dispute Ms. Casaus' statement that no such incident was ever reported to her. ECF No. 33-2 at 3–4. Nor does he produce evidence to support his own allegation. "[U]nsworn statements do not meet the requirements of 'affidavits' and thus cannot be used to support motions for summary judgment or responses thereto." *Barnes v. United States*, 173 F. App'x 695, 697–98 (10th Cir. 2006) (quoting *Small v. Lehman*, 98 F.3d 762, 764 n.5 (3d Cir. 1996)). Even assuming, arguendo, that Ms. Fleshman and Ms. Cruz made the alleged error, the

subsequent lack of disciplinary action gives rise to no inference of discrimination because their supervisors were unaware of the infraction.

The alleged violations by "unknown technicians" cannot support an inference of sex discrimination because there is no evidence that the unknown technicians were female. In fact, Exhibit 8 to Mr. Fraire's response shows that approximately half of the technicians were male (six male versus eight female). ECF No. 40 at 15. It is therefore almost equally likely that the alleged violations were committed by male employees. Moreover, regardless of their sex, the technicians could not be terminated or otherwise disciplined because their identities were unknown.

Ms. Casaus stated in her declaration that "between December 15, 2013, and November 6, 2014, no other probationary employee had three documented instances of serious misconduct as did Mr. Fraire." ECF No. 33-2 at 4. Mr. Fraire neither disputed this statement in his response brief nor presented evidence to the contrary. Outside of his unsupported allegations, therefore, Mr. Fraire does not "identify a female employee who engaged in similar conduct and obtained better treatment." *Ibrahim*, 994 F.3d at 1201.

Mr. Fraire's other claims of disparate treatment are similarly unavailing. Although the complaint alleges that similarly situated female employees received preferential treatment, no evidence supports that conclusion. At the outset, many of Mr. Fraire's allegations—such as the friendships between female coworkers, the failure to include him in Omnicell implementation meetings, and the "public admonishment" he received from Ms. Casaus in March 2014—do not describe adverse employment actions under Title

9

VII.[8] *See, e.g.*, *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (disparate treatment claimants must demonstrate that they suffered an adverse employment action); *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (adverse employment action includes "significant change in employment status" such as failure to promote or reassignment with significantly different responsibilities, but not "a mere inconvenience or an alteration of job responsibilities"). Even if the allegations did describe adverse employment actions, Mr. Fraire has not submitted evidence of preferential treatment to female employees. With respect to the Omnicell implementation meetings, for instance, Mr. Fraire alleges in the complaint that "Marissa Vega (pharmacy technician) was exclusively included in Omni-cell implementation meetings with Celeste, April and Karsondra in approximately April 2014." ECF No. 7 at 7. But he has not controverted Ms. Casaus' sworn statement that the Omnicell contract was canceled in April 2014 and that all work on the contract immediately ceased. ECF No. 33-2 at 5. With respect to Mr. Fraire's allegation that he was "not considered for IV chemo shifts despite having demonstrably more IV experience than most co-workers," neither allegation nor evidence suggests that female employees were selected in his place.[9] Mr. Fraire also alleges that

---

[8] Upon careful review of the second amended complaint, it does not appear that Mr. Fraire intended to assert a claim for sex discrimination based on a hostile work environment. To the extent a hostile work environment claim was asserted, the Court finds Mr. Fraire has neither alleged nor proven facts sufficient to raise an inference that the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (quotation omitted). In particular, Mr. Fraire's unsupported allegation that he "cannot recall ever witnessing or hearing about another technician being verbally reprimanded in a public space as I was [by Ms. Casaus] on March 11th, 2014," ECF No. 40 at 3, is insufficient to establish a prima facie case for summary judgment.

[9] Mr. Fraire also does not dispute Ms. Casaus' statement that his request to work on IV chemo shifts was denied because he had less than one year of experience working on the IV floor and was not a certified IV technician. ECF No. 33-2 at 4.

Ms. Fleshman used her scheduling power "to give preferential treatment to herself."[10] ECF No. 40 at 3, 18. However, preferential treatment of oneself does not support an inference of sex discrimination.

Mr. Fraire alleges that Pharmacy Technician Tanya Young was assigned a technician trainer role in August 2014 with no previous job experience. ECF No. 7 at 7. Ms. Casaus stated in her declaration that Ms. Young was, indeed, assigned the technician trainer role. However, she explained:

> In January 2014, I appointed Tonya [sic] Young to assist in the training of new pharmacy technicians. Ms. Young received no additional benefits or compensation for her assistance. Ms. Young had interned 16 weeks for the VA prior to being hired and was familiar with the procedures and practices of the Inpatient Pharmacy Unit. Although Mr. Fraire had years of pharmacy experience, I did not consider him because he was new to the VA, having worked only 2–3 weeks, and had not yet completed his Inpatient Technician training . . . I generally did not permit employees with less than 90 days of experience [to] assist with the training of new employees.

ECF No. 33-2 at 4. Ms. Casaus noted that Mr. Fraire never expressed any interest in serving as a trainer. *Id*. While Mr. Fraire acknowledges that he "cannot recall if [he] spoke with Celeste concerning Tanya's training assignment," he asserts that he "had at least the same amount of VA experience as Tanya on her start date as she actually started working in the pharmacy towards the Summer of 2014[.]" ECF No. 40 at 3. The cited exhibit does not, however, appear to contain any information about Ms. Young's start date or level of experience. *See id*. at 15. Mr. Fraire also fails to demonstrate that he and Ms. Young were similarly situated at the time Ms. Casaus made the decision in January 2014,

---

[10] It is not quite clear how the cited exhibit supports Mr. Fraire's allegation that Ms. Fleshman gave preferential treatment to herself. However, for summary judgment purposes the Court assumes, without deciding, that she did.

when Ms. Young had sixteen weeks of VA experience and Mr. Fraire had only two to three.[11] Moreover, unless Mr. Fraire can establish "background circumstances" showing that the VA tended to discriminate against males, it is "not enough . . . merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision." *Notari*, 971 F.2d at 590. Instead, he "must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference" that but for his sex, the challenged decision would not have occurred. *Id*. Mr. Fraire has not carried this heightened burden.[12]

Nor has Mr. Fraire shown "background circumstances" sufficient to support an inference that the VA discriminated against male employees. Mr. Fraire was not the only male Pharmacy Technician; in fact, as previously noted, the number of male and female employees was approximately equal. *C.f. Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1535 (10th Cir. 1995) (finding the requisite "background circumstances" where the plaintiff was "the only white employee in the otherwise all-Hispanic Bilingual/ESOL Department"). It appears, moreover, that male and female employees were equally distributed across pay grades. Mr. Fraire's Exhibit 8 reveals there were three males and three females at Grade 6; three males and four females at Grade 5; and one female at Grade 4. ECF

---

[11] Though the Court need not decide the question, it is also doubtful that Ms. Casaus' failure to select Mr. Fraire to assist with technician training constituted an adverse employment action. Ms. Casaus explained, as quoted above, that the training assignment entailed no additional compensation or benefits. It does not appear that the training assignment constituted a "reassignment" or entailed significantly different work responsibilities. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004) ("adverse employment actions" include, e.g., "failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). However, the Court finds in any case that Mr. Fraire has failed to establish facts supporting an inference of reverse discrimination.

[12] The Court also finds, in the alternative, that even if Mr. Fraire established a prima facie case based on Ms. Young's assignment he has failed to show that Defendant's legitimate, nondiscriminatory explanation for the decision was pretextual. *See Argo*, 452 F.3d at 1201.

No. 40 at 15. Although Mr. Fraire's direct supervisor was female, the ultimate decision to terminate was made by Mr. Palmer, who is male. *C.f. Reynolds*, 69 F.3d at 1535 (finding that "Hispanic supervisors made most of the employment decisions of which Reynolds complains"). Mr. Fraire has adduced no evidence that males were routinely given less favorable treatment in the assignment of roles and responsibilities.

In short, it is not enough at this stage for Mr. Fraire to make conclusory allegations that female employees were treated preferentially or even to demonstrate, by evidence, that his own treatment was unfair.[13] The federal courts do not sit as a "super personnel department," *Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quotation omitted), and the Court can find in Mr. Fraire's favor only if he carries his prima facie burden to establish reverse discrimination. He has not done so here. Finding no genuine dispute of material fact, and finding that Defendants are entitled to judgment as a matter of law, the Court will grant the motion.

## CONCLUSION

For the foregoing reasons, Defendant McDonough's Motion for Judgment on the Pleadings (ECF No. 25) is **DENIED**. Defendant McDonough's Motion for Summary Judgment (ECF No. 33) is **GRANTED**, and summary judgment is **ENTERED** in favor of Defendants on all claims.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[13] Therefore, although the Court has carefully considered Mr. Fraire's arguments and evidence to the effect that (1) he never received adequate training regarding the storage requirements for codeine and (2) he was not notified about the May 12, 2014 ROC, they are immaterial to the Court's determination because they do not raise an inference of reverse sex discrimination.